McIlvatne, J.
At the time of listing its property for taxation, did any obligation or duty rest on the plaintiff in error, in respect to re-insurance or otherwise, whereby, under the tax laws of the state, it became entitled to deduct from its “ claims and demands ” a sum equal to 50 per cent, of all *568 premiums on unexpired policies, and designated as “ re-insurance fund” in section 274, and as “unearned premiums” in section 3648 of the Revised Statutes %
Section 274 reads as follows:
“ When it appears to the Superintendent (of insurance) . . . . that the assets of any joint stock insurance company other than life, . . . after deducting therefrom all actual liabilities and a re-insurance fwid equal to fifty per cent, of the whole amount of the premiums on unexpired risks and policies, are reduced twenty per cent, or more below the capital stock required by law, he shall require the officers thereof to direct the stockholders to pay in the amount of such deficiency, etc.”
Section 3648 is as follows:
“No insurance company, organized under any law of this state, shall make any dividend except from the surplus profits arising from its business ; and in estimating its profits there shall be reserved therefrom :
“ First. A sum equal to fifty per cent, of the whole amount of premiums on unexpired risks and policies, which is hereby declared to be unearned premiums.”
The portion of an insurance company’s assets thus designated is not set apart, or appropriated by law, for any particular-use; but it remains a part of the general assets of the company for general uses, save only the payment of dividends.
All money received by an insurance company on account of premiums, whether earned or “ unearned,” remaining the property of the company, in the form of money, or in any other form at the time of listing, is subject to taxation under section 2744 of Revised Statutes, which reads as follows:
“ Every insurance company in Ohio, whether incorporated by any law of this state or not, shall list for taxation. . . . all the personal property, which shall be held to include all such real estate as is necessary to the daily operations of the company, money and credits of such company or corporation within the state at the actual value in money.”
The same may be said of the “ re-insurance - fund,” which consists of property in any form, and confessedly is not dis *569 tinguishable from tlie assets which represent “ unearned premiums.” Not only so, but it is admitted, that the plaintiff in error has uniformly stated in its return of property for taxation, all its assets, whether personal property (which under this section includes real estate) money or credits.
The contention now is as to the right of the company to deduct, in its return, from its credits, as a “legal bona fide debt,” a sum equal to 50 per cent, of all premiums on unexpired policies, under section 2730 of the Revised Statutes, which reads as follows :
“ The term ‘ credit,’ shall be held to mean the excess of the sum of all legal claims and demands, whether for money or other valuable thing, or for labor or service due or to become due to the person liable to pay taxes thereon, including deposits in banks, or with persons in or out of this state, other than such as are held to be money, as hereinbefore defined, •when added together (estimating every claim or demand at its true value in money,) over and above the sum of legal bona fide debts owing by such persons; but in making up the sum of such debts owing, there shall be taken into account no obligation to any mutual insurance company, nor any unpaid subscription to the capital stock of any joint stock company, nor any subscription for any religious, scientific, literary or charitable purpose, nor any acknowledgment of any indebtedness unless founded on some consideration actually received, and believed at the time of making such acknowledgment to be a full consideration therefor: nor any acknowledgment made for the purpose of diminishing the amount of credits to be listed for taxation; nor any greater amount or portion of any liability as surety / than the person reguired to- malee the statement of such credits believes that such surety is in eguity bound, and will be compelled to pay, or to contribute, in case there be no securities ; provided, that pensions receivable from the United States shall not be held to be credits; and no person shall be required to take into account, in making up the amount of credits, a greater portion of any credits than he believes will be received or can be collected, or any greater portion of any obligation given to secure the payment of *570 rent, than the amount that shall have accrued on any lease and remain unpaid.”
Upon what ground can the item returned as “ re-insurance ” be regarded as a “ legal bona fide debt ” owing by the company %
Unless the context requires some other construction surely the phrase “ legal bona fide debts owing by such persons ” can mean nothing more than a fixed liability to pay a sum or sums certain, due or to become due at all events, to some other person or persons — it being understood, of course, that that is certain which can be made certain. Does such liability-rest upon the plaintiff in error in respect to the sum in controversy, either by virtue of the statute, or its own contracts ?
An insurance company is liable to the full extent of all its assets for losses covered by its policies. This liability is fixed by the contract of insurance. The amount of this liability is certain ; and where the loss has occurred, no doubt a legal bona fide debt exist. But where the loss has not happened, and may never happen, there exists no debt within the meaning of this statute. This is conceded, by plaintiff in error, and no claim is made on the ground of such liability.
It is claimed, however, that the company is authorized to re-insure its unexpired risks ; the expense of which would be at least 50 per cent, of all premiums on its unexpired policies, and that the statute requires it to keep in reserve that amount of assets. Let it be granted. Still,' the company is under no obligation to re-insure; nor is it claimed that it has re-insured any of its risks. And until it does re-insure, it is impossible to say that it owes debts on account of re-insurance. True, the statute requires it to keep in reserve assets equal to eighty per cent, of its capital stock over and above all its actual liabilities, and a re-insurance fund equal to fifty per cent, of all premiums on unexpired policies; yet this re-insurance fund is not a debt, or in the nature of a debt.
It is also claimed that the company, under certain circumstances, is bound to l’edeem its policies. Section 3664, Revised Statutes, requires insurance companies to insert in their policies an obligation to cancel the same upon the written request of *571 the person insured; and section 3665 provides: “ When a policy issued on the cash 'plan is cancelled, in accordance with the preceding section, the companies so issuing may retain customary short rates, as now established and charged by companies doing a cash business, for the time the policy has been in force, and return to the insured the unearned premium on the policy for the unexpired time.” Surely, this obligation, before request to cancel by the person insured, is no more “ a legal bona fide debt” than is the liability to pay losses covered by the policy before a fire insured against has taken place. Under this provision, a debt may or may not accrue; but, whether any such debt existed at the time of listing, we are not informed. On this point it may be further remarked, that if every policy were cancelled (an improbable event), the amount due policy holders would be less than the amount sought to be withdrawn from taxation, as the company, in such case, is authorized to retain “ customary short rates.”
It is further claimed, on behalf of the plaintiff in error, that, if neither reinsurance nor cancellation is effected, a duty rests on the company to carry its risks until the expiration of its policies, which is a service of agreed and fixed value, to wit: the amount of unearned premiums; and therefore a legal bona fide debt within the meaning of the statute.
This claim is based, as we understand it, upon the statutory definition of credits, to wit: “ all legal claims and demands, whether for money or other valuable thing, or for labor or service due or to become due,” etc.
The theory of the claim is, that for every credit there must be a corresponding debt; and if a claim for service be a credit, the owing of service is a debt. This point is urged with much, ingenuity and ability by counsel, and while we are willing to adopt his theory, we are not ready to adopt his conclusions.
Assuming that creditor and debtor are relative terms, we are not now required to determine the full meaning of the phrase, “legal claim or demand for labor or service,” but only, whether a contract for insurance is a contract for “labor or service,” within the meaning of the statute, whereby the relation of debtor and creditor is created. If such relation exists, *572 the insurex- becomes the debtor by reason of his obligation to continue the risk until the expiration of the policy, and it is self-evident that the insured is a creditor on the same account. And it follows, if the insurer may deduct from his “ claims and demands ” the amount of “ unearned premiums ” as a “ legal bona fide debt ” on account of “ service owing,” that the person insured must list for taxation a like amount, on account of “ service due ” to him. That every person holding a policy of insurance should list for taxation the value of his right to have the risk carried until the expiration of the policy, is, to say the least, a novel proposition.
What is the right of the assured under his contract ? To have indemnity in case of loss. Nothing more. What is the obligation of the insurer in his contract ? To indemnify the assured in case of loss. Nothing more. If no loss occurs during- the life of the policy, the assured takes nothing by his contract, arid the insurer loses nothing. It is therefore plain, that until a loss occurs, the relation of creditor and debtor does not exist between the parties.
It is said, that a policy is a “ valuable thing,” before a loss covered by it takes place. How so ? Clearly, it does not add to the value of the property insured. It is not a thing valuable in its use. It is not an article valuable in trade. But it is said the holder may, at any time, demand its cancellation and recover the “ unearned premium,” so called. True, the statute secures to the holder such a privilege; but he cannot exercise the privilege and hold the indemnity also. The object in obtaining insurance is to secure indemnity against loss —not the investment of money; hence the right to demand cancellation, until exercised, is of no taxable value. After the right to demand cancellation is exercised, and the right to indemnity is thereby abandoned, of course the taxable property of the assured is increased, and that of the insurer diminished, to the extent of the premium returned, or liable to be returned, as above shown.
Upon full consideration of all the facts and the law, we are of opinion, that a policy of insurance, issued upon a paid-up premium, before condition broken, does not constitute a *573 contract for service, which can be construed as creating a credit on the part of the assured, or a debt on the part of the insurer, within the meaning of the statute.
2. The next question is, Did the court below err in restraining the auditor from charging taxes against the plaintiff in error on account of re-insurance deducted from “ claims and demands” in the years 1878, 1879, 1880 and 1881, and a penalty on the like deduction in 1882? The solution of this question depends on the extent of power conferred upon the auditor by sections 2781 and 2782 of Devised Statutes. The decision of the court will be apparent by quoting section 2781, which is as follows : •
“ See. 2781. If any person whose duty it is to list property or make a return thereof for taxation, either to the assessor or to the county auditor, shall make a false return or statement, or shall evade making a return or statement, the county auditor shall ascertain, as near as practicable, the true amount of personal property, moneys, credits, and investments, that such person ought to have returned or listed, to which amount he shall add fifty per centum, and place the same on the tax-list ; and the inquiry and corrections provided for in this and the next sections may go as far back as the same can be traced, not exceeding the four years next prior to the year in which the inquiries and corrections are made, but as to former years, no ■ penalty shall be added, and only simple taxes shall be claimed.”
The point is, were these returns or statements false ? They were made upon printed blanks furnished by the auditor, and in conformity thereto. The law required the auditor to furnish blanks for that purpose. The value of all property of the company subject to taxation was truly returned. The amount of re-insurance was also returned among the debts of the company, in conformity to the requirement of the blank form. No doubt the auditor at the time the blank was'furnished, believed that this item, with full knowledge of its character, was a debt which could properly be deducted from the credits of the company ,• and that the company, when it returned the item, was of the same opinion. But, however *574 that may be, we are of opinion that the returns as made, under the circumstances shown, were not false within the meaning of these sections. This point is further elucidated by the decision upon the next question made in this case, as we do not think that the remedy provided by sections 2781 and 2782 was intended to apply in cases where section 1038 is applicable.
3. Did the superior court err in holding that the auditor had power under section 1038 of Revised Statutes to correct the amount of plaintiffs’ taxes for the year 1882 ?
This section provides:
“ The auditor shall, from time to time, correct all errors which he discovers in the tax-list and duplicate, either in the name or the person charged with taxes or assessments, the description of lands or other property, or when ¡oroperty exempt from taxation has been charged with tax, or in the amount of such taxes or assessments.” . . .
True, it was held in State v. Com. of Montgomery County, 31 Ohio St. 271, that the corrections which the auditor may make under this section are merely clerical. The error to be corrected in relation to the plaintiff’s taxes was the deduction of the re-insurance item from its credits. No fact is to be inquired into. Every necessary fact appeal’s on the face of the return. Charge the proper rate of taxes upon the amount of credits returned without any deduction on account of the,reinsurance item, and the error in the amount of plaintiff’s taxes will be corrected — clerical work merely. Corrections authorized by this section are limited, however, to the current tax-list and duplicate.

Judgment affirmed.